UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| THE UNITED COMPANY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 08-148-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| AMERICAN INTERNATIONAL SOUTH | ) | **ORDER** |
| COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case was originally filed in Kentucky state court and removed to this Court on the basis of diversity jurisdiction. The plaintiffs subsequently filed a Motion to Remand, R. 3, arguing that the case lacks complete diversity because two plaintiffs and one defendant are citizens of Delaware. In response, the defendants acknowledge that there is not complete diversity. However, they argue that the citizenship of the non-diverse parties should be disregarded because those parties were fraudulently joined. Because the Court agrees that the non-diverse defendant was fraudulently joined, the Court finds that there is complete diversity. Therefore, the plaintiffs' motion is **DENIED**.

I.

This case arises out of failed negotiations for workers' compensation insurance coverage. The plaintiffs are: (1) The United Company ("United"), a corporation organized under the laws of the Commonwealth of Virginia and having its principal place of business in the Commonwealth of Virginia; (2) United Coal Company, LLC ("UCC"), a limited liability company having citizenship in the Commonwealth of Virginia and the State of Delaware; (3) Sapphire Coal Company ("Sapphire"), a corporation organized under the laws of the Commonwealth of Virginia and having

its principal place of business in the Commonwealth of Kentucky; and (4) Wellmore Coal Company, LLC ("Wellmore"), a limited liability company having citizenship in the Commonwealth of Virginia and the State of Delaware. *See* R. 1, Ex. A (part 1) at 5; R. 3, Mem. in Supp. at 2-3. The defendants are: (1) American International South Insurance Company ("American South"), a corporation organized under the laws of the Commonwealth of Pennsylvania and having its principal place of business in the State of New York; (2) Imperial A.I. Credit Companies, Inc. ("Imperial A.I."), a corporation organized under the laws of the State of Delaware;[1] and (3) National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), a corporation organized under the laws

---

[1] The Complaint actually names as a defendant "Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation" rather than "Imperial A.I. Credit Companies, Inc." *See* R. 1, Ex. A (part 1) at 4. The defendants argue that "Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation" does not properly identify any defendant because "Imperial A.I. Credit Companies" is nothing but a trademark, and there is no such company as "A.I. Credit Corporation." *See* R. 9 at 3. The plaintiffs contend that this is just a scrivener's error, and that they meant to name as a defendant "Imperial A.I. Credit Companies, Inc.," which exists as a Delaware Corporation. *See* R. 13 at 2-3. The Court is satisfied that this was merely a scrivener's error, and the Court recognizes that it has significant discretion in remedying such matters. *Cf. Morrel v. Nationwide Mut. Fire Ins. Co.*, 188 F.3d 218, 224 (4th Cir. 1999) ("It has long been the rule in this circuit that service of process is not legally defective simply because the complaint misnames the defendant in some insignificant way."); *United States v. A.H. Fischer Lumber Co.*, 162 F.2d 872, 873 (4th Cir. 1947) ("As a general rule the misnomer of a corporation in a notice, summons ... or other step in a judicial proceeding is immaterial if it appears that [the corporation] could not have been, or was not, misled.") (quotation omitted); *Barrett v. Transunion Consumer Relations*, No. C-06-291, 2006 WL 3487548, at *2 (S.D. Tex. Dec. 1, 2006) ("It was clear that the Plaintiffs were suing Trans Union, even though they phrased their Complaint as against 'Transunion Consumer Relations.' Defendant does not dispute that it was served at its place of business, that a Trans Union 'Group Manager' accepted service, and that the word 'Transunion' was clearly listed on the summons and complaint. Moreover, Defendant was not prejudiced by Plaintiffs' mistake regarding its name."); *Kroetz v. AFT-Davidson Co.*, 102 F.R.D. 934, 937 (E.D.N.Y. 1984) ("Since the summons and complaint gave said defendant adequate notice that it was being sued, and since no prejudice resulted from the misnaming, we find that it would be inequitable to construe the Federal Rules of Civil Procedure as requiring dismissal of this action."). Because the defendants have not been prejudiced by this scrivener's error, the Court orders that the named defendant be transformed from "Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation" to "Imperial A.I. Credit Companies, Inc."

of the Commonwealth of Pennsylvania and having its principal place of business in the State of New York. *See* R. 1 at 4; R. 9, Ex. A at 1.

The plaintiff business entities are all related to each other. The United Company is a member and majority owner of UCC, which in turn is both the owner of Sapphire, and a member and majority owner of Wellmore. *See* R. 1, Ex. A (part 1) at 5. The defendants are likewise related to each other as they are all subsidiaries or affiliates of American International Group, Inc. ("AIG").

In the fall of 2006, United entered into negotiations with American South and National Union for the purpose of acquiring workers' compensation insurance for Wellmore and Sapphire. *See* R. 3, Ex. 6 at 2-3. Believing that an agreement would be reached, UCC made a $626,000 down payment toward future premiums on November 30. *See* R. 1, Ex. A (part 3) at 58. Before the end of the year, UCC made an additional cash advance of $258,363.44 to AICCO Inc. (an AIG company that has not been made a party to this lawsuit), *see id.* at 59, and United provided National Union with a letter of credit in the amount of $2,323,000, *see id.* at 55-56. By the end of January 2007, however, the negotiations ground to a halt because of a dispute over a provision in the proposed cross-collateralization agreement. *See id.* (part 4) at 1-4. Notwithstanding this dispute, the plaintiffs apparently continued to believe that a deal would be struck, and so UCC made yet another cash advance of $258,363.44 to AICCO Inc. on March 16, 2007. *See id.* (part 3) at 60. Shortly after that payment, the plaintiffs gave up hope of reaching an agreement with the AIG companies and instead acquired workers' compensation insurance from Old Republic Insurance Company ("Old Republic"). *See id.* (part 4) at 10. After acquiring insurance from Old Republic, UCC requested the return of its cash advances, and United requested the return of its letter of credit. *See id*. Both of these requests were denied.

Upon issuing insurance to the plaintiffs, Old Republic informed the Kentucky Office of Workers' Claims that Old Republic, rather than the defendants, would be providing workers' compensation insurance to the plaintiffs. *See id.* at 17. The Kentucky Office of Workers' Claims ordered the defendants to submit documentation confirming that the defendants were not the plaintiffs' insurance providers, *see id.* at 19, but the defendants never complied with this order. According to the plaintiffs, the defendants' failure to submit the requested documentation has caused confusion in claims administration and has disrupted the plaintiffs' business. *See* R. 3, Ex. 6 at 6.

The plaintiffs originally brought suit in this Court on March 7, 2008. *See The United Co. v. Am. Int'l Group, Inc.*, No. 7:08-cv-00043-ART. However, that case was voluntarily dismissed by the plaintiffs on July 3, 2008. On that same day, the case was re-filed in Kentucky state court. *See* R. 1, Ex. A (part 1) at 4. Relying on diversity jurisdiction under 28 U.S.C. § 1332, the defendants removed the case to this Court on July 28. *See* R. 1 at 2. The plaintiffs moved for remand almost immediately, arguing that there is incomplete diversity because Delaware citizenship is possessed by Plaintiffs UCC and Wellmore, as well as Defendant Imperial A.I. *See* R. 3., Mem. in Supp. at 5. In response, the defendants contend that the citizenship of UCC, Wellmore, and Imperial A.I. should be disregarded for the purposes of determining diversity because those parties were fraudulently joined. *See* R. 9 at 2. While the Court is not convinced that Plaintiffs UCC and Wellmore were fraudulently joined, the Court agrees that Imperial A.I. was fraudulently joined.

II.

To determine whether a non-diverse defendant is fraudulently joined, the Sixth Circuit has instructed courts to ask whether the plaintiff has a colorable basis for his claims against the defendant. *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). To answer that

4

question, the following standard should be used:

> There can be no fraudulent joinder unless it [is] clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law . . . . Therefore the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. [Restated,] the question [is] whether there was any reasonable basis for predicting that [the plaintiff] could prevail.

*Alexander v. Elec. Data Sys., Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotations and citations omitted). The defendants, as the removing party, have the burden of demonstrating fraudulent joinder. *Id.* Any doubts as to whether fraudulent joinder applies are resolved against removal. *See Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 406 (6th Cir. 2007) (citing *Alexander*, 13 F.3d at 948-49).[2] Similarly, any disputed questions of fact and any ambiguities in the applicable state law should be resolved in favor of the plaintiffs, as the non-removing party. *Alexander*, 13 F.3d at 949.

The doctrine of fraudulent joinder is ordinarily invoked by defendants "alleging that a co-defendant was fraudulently added to destroy diversity." *Eberspaecher N. Am., Inc. v. Van-Rob, Inc.*, No. 06-15752, 2007 WL 2332470, at *4 (E.D. Mich. Aug. 15, 2007). In light of this fact, and the fact that "the Sixth Circuit has not addressed whether the doctrine applies equally to fraudulently joined plaintiffs," *id.*, it is not entirely clear whether courts should use the doctrine to analyze the joinder of non-diverse plaintiffs as well as defendants, *see id*. Nevertheless, assuming that the doctrine applies to the joinder of non-diverse plaintiffs, it is clear that UCC and Wellmore both satisfy the fraudulent joinder standard because they both have a colorable basis for at least some of

---

[2] The Court acknowledges that unpublished decisions of the Sixth Circuit are not binding under the doctrine of stare decisis. *United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007). Accordingly, the Court considers such decisions for their persuasive value only. *See id.*

their claims. The defendants contend that UCC is a nominal, formal, or sham party who has no interest in this litigation because of the fact that it was United, rather than UCC, who conducted the negotiations. While United may have conducted the negotiations, the bottom line is that UCC made payments that it now claims should be refunded. As the defendants have not demonstrated that Kentucky law prevents UCC from recovering its money, there is an arguably reasonable basis for predicting that Kentucky law might impose liability on the facts of this case. This is especially so considering that all questions of fact and law must be resolved in favor of the plaintiffs under the fraudulent joinder analysis.

Wellmore has likewise asserted at least one colorable claim. Like the other plaintiffs, Wellmore contends that it has been harmed — and continues to be harmed — by the defendants' failure to submit documentation in compliance with the order from the Kentucky Office of Workers' Claims. To remedy this ongoing harm, Wellmore seeks a court order directing the defendants to file the requested documentation. The defendants argue that there is no colorable basis for this claim because it depends on the existence of an insurance relationship that never came into existence. *See* R. 9 at 11. This is not true. The claim has nothing to do with the existence of an insurance relationship. Instead, it is based entirely on the harm caused to Wellmore by the defendants' failure to comply with the order of the Kentucky Office of Workers' Claims. The defendants further suggest that only the Commonwealth of Kentucky can sue to enforce the rights of the Kentucky Office of Workers' Claims. The problem with this argument is that it assumes too much. In suing to force the defendants to comply with the order from the Kentucky Office of Workers' Claims, Wellmore is not necessarily attempting to assert the rights of that state agency. Instead, it appears as though Wellmore is simply asserting its right to be free from the negative consequences that it is

suffering as a result of the defendants' failure to comply with the state agency's order. Because the defendants have not demonstrated that such an attempt would necessarily be thwarted by Kentucky law, this is a colorable claim. In short, there is no fraudulent joinder with respect to Wellmore because Wellmore has alleged an ongoing tangible harm that would be remedied by the requested relief, and there is an arguably reasonable basis for predicting that Wellmore might prevail on this claim.

The claims against Defendant Imperial A.I., however, are another matter. These claims are not colorable because Imperial A.I. was not involved in any of the events underlying this case. In making their argument to the contrary, the plaintiffs point to invoices bearing the words "Imperial A.I. Credit Companies ®." *See* R. 1, Ex. A (part 4) at 25. According to the plaintiffs, this is proof that Imperial A.I. played a role in these events. However, it is obvious that these words are a trademark and were used as such. As discussed at argument, and as the parties appear to concede, this trade name is used by multiple AIG companies and therefore cannot be construed to signify any involvement on the part of Imperial A.I. in particular in the events giving rise to this case. Moreover, despite repeated requests from the Court, the plaintiffs have not been able to identify a single act committed by Imperial A.I. in the course of these events. Instead, they simply point to the use of the "Imperial A.I. Credit Companies ®" trade name and make reference to collective acts committed by the AIG companies in general. This does not show involvement on the part of Imperial A.I. Indeed, in the entirety of the record, there is no indication that Imperial A.I. is involved in the events giving rise to this case. On top of this lack of evidence of Imperial A.I.'s involvement is an affidavit from an Imperial A.I. executive attesting to the fact that Imperial A.I. has neither conducted business with the plaintiffs nor received their money. *See* R. 9, Ex. A at 2. Together, all of these facts indicate that

there is no basis for liability on the part of Imperial A.I. Because Imperial A.I. was fraudulently joined, the claims against it must be dismissed. *See Probus*, 234 F. App'x at 407; *see also* Fed. R. Civ. P. 21. This results in complete diversity and necessitates the denial of the plaintiffs' motion.

III.

For the foregoing reasons, it is **ORDERED** as follows:

(1)   The Complaint shall be amended to name "Imperial A.I. Credit Companies, Inc." as a defendant in place of "Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation."

(2)   The claims against Defendant Imperial A.I. Credit Companies, Inc., are **DISMISSED WITHOUT PREJUDICE**.

(3)   The plaintiffs' Motion to Remand, R. 3, is **DENIED**.

(4)   The defendants shall have seven (7) days from the entry of this Order to respond to the plaintiffs' Motion for Leave to Amend Their Complaint, R. 16, and the plaintiffs shall then have seven (7) days from the date of the defendants' response to file a reply.

This the 15th day of October, 2008.



Signed By:
*Amul R. Thapar*   AT
United States District Judge